IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No.  13-cv-01668-LTB-CBS

JOANN DODEA,

          Plaintiff,

v.

CITY OF RIFLE,
SERGEANT DIEGO PIÑA,
OFFICER BRITTANY KOLEY,
OFFICER MICHAEL PRUITT,
OFFICER JEREMY MUXLOW, and
UNKNOWN EMPLOYEES AND AGENTS OF THE CITY OF RIFLE,

          Defendants.

---

## ORDER

---

This matter is before me on a Motion for Summary Judgment Asserting Qualified Immunity [**Doc #41**] in which the Defendants, the City of Rifle, Sergeant Diego Piña, Officer Brittany Koley, Officer Michael Pruitt, and Officer Jeremy Muxlow, seek entry of judgment in their favor, and against Plaintiff Jo Ann Dodea, based on a defense of qualified immunity. Oral arguments would not materially assist me in my determination of this motion.  After consideration of the parties' arguments, and for the reasons stated, I GRANT the motion and, as such, I DISMISS this case.

## I. BACKGROUND

The underlying facts, which are undisputed unless otherwise noted, are as follows.  In May of 2012, a report was made to the City of Rifle Police Department that chickens were being

kept on residential property located in the City of Rifle and owned by Plaintiff.  In response to this complaint, Community Service Officer Brittany Koley went to the property on May 21, 2012.  Plaintiff allowed her onto her property, where Officer Koley observed a large number of chickens and five geese being kept in violation of Rifle Municipal Code §7-6-103(a).  After several follow-up conversations, Officer Koley ultimately advised Plaintiff that she was not permitted to have chickens or geese living on the property under Rifle Municipal Code.  As such, Plaintiff was given one week (until May 30, 2012) to remove them.

Officer Koley returned on May 30, 2012.  During her initial visit to the property, Officer Koley left her card on Plaintiff's front door, and then walked around the property to see if she could see any chickens or geese.  At her deposition, Officer Koley admitted that during that visit she observed no fowl on the property. [Doc #49-2]  She return two hours later, and met with Plaintiff who would not tell her whether or not the chickens and geese were still being kept on the property.  Plaintiff then informed Officer Koley that she would need a search warrant in order to remain on the property.

Officer Koley, with the assistance of Detective Justin Macklin (who is no longer a defendant in this case), applied for a search warrant of Plaintiff's property.  The search warrant affidavit – signed by Macklin based on Officer Koley's investigation – failed to include that Officer Koley did not see or hear any chickens or geese while at the property two times earlier that day.  A warrant was subsequently issued for the search for domestic fowl at Plaintiff's property. [Doc #41-9]  The following day, on March 31, 2012 at 11:00 am., Officer Koley and Detective Macklin searched Plaintiff's property while she was not there.  The search revealed no chickens, but five geese were found in the garage.

2

After returning from the search, Officer Koley drafted two penalty assessment citations – one against Plaintiff and one against her roommate – for violation of Rifle Municipal Code §7-6-103(a) for keeping geese on the property. [Doc #41-5]  A penalty assessment citation permits the payment of a fine, but if payment is not made within 20 days, appearance in court at a specific day and time is required.  At that time the Chief of Police specifically directed Officer Koley not to arrest Plaintiff, but rather to wait and if she did not appear in court on the appointed date, the court could issue an arrest warrant. [Docs #41-22, #47-2, #47-3]

Officers Michael Pruitt and Jeremy Muxlow were given the citations for service on the evening of May 31, 2012.  At that time Sergeant Diego Piña instructed Officer Pruitt to arrest Plaintiff if she refused to sign the citation. [Doc #41-12]  Sergeant Piña, in his affidavit in support of this motion, indicated that he ordered the arrest because a refusal to sign is an event that suggested to him that the accused individual is unlikely to comply with the terms of the citation. [Doc #41-12]  When they arrived at Plaintiff's property, Officers Pruitt and Muxlow served the citation and told her that if she did not sign it she would be arrested and taken into custody. [Docs #41-10, #47-1]  After Plaintiff refused to sign the citation, Officer Pruitt and Muxlow contacted Sergeant Piña, via police radio, and confirmed with him that they were to arrest Plaintiff.  Officer Muxlow then placed Plaintiff in handcuffs and arrested her.  Thereafter, Sergeant Piña arrived at the scene and again demanded that Plaintiff sign the citation or, instead, go to jail.  When she refused, she was transported to the police station where she was fingerprinted and photographed. [Doc #41-20]

When the Chief of Police was informed of the arrest, he expressed "disappointment" as Plaintiff should not have been arrested pursuant to his prior instructions to Officer Koley. [Doc

#49-4]  Sergeant Piña then voided the penalty assessment citation, and instead served Plaintiff

with a summons and complaint which was marked "refused" for service. [Doc #47-4] Plaintiff

was released.  Ultimately, Plaintiff's roommate (who apparently owned the geese) paid the $150

fine pursuant to the citation served on him.  As such, the charges against Plaintiff were

dismissed.

Plaintiff subsequently filed this civil rights complaint, pursuant to 42 U.S.C. §1983,

claiming Unlawful Search & Seizure and Deprivation of Equal Protection, in violation of her

constitutional rights, as well as Municipal Liability against the City of Rifle.  She also asserts the

following state law claims: false imprisonment; battery; abuse of process; malicious prosecution;

intentional infliction of emotional distress; and negligent hiring, training and supervision.

Defendants have filed this motion seeking summary judgment on Plaintiff's claims based on

qualified immunity.

## II. QUALIFIED IMMUNITY

The doctrine of qualified immunity protects government officials from liability for civil

damages insofar as their conduct does not violate clearly established statutory or constitutional

rights of which a reasonable person would have known.  *Pearson v. Callahan*, 555 U.S. 223,

231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)(*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818,

102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).  Qualified immunity "gives government officials

breathing room to make reasonable but mistaken judgments," and "protects 'all but the plainly

incompetent or those who knowingly violate the law.'"  *Messerschmidt v. Millender*, ___ U.S.

___, 132 S.Ct. 1235, 1244-45, 182 L.Ed.2d 47 (2012).

"[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Id.*, 132 S.Ct. at 1245 (*quoting Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).    As such, once a defendant asserts qualified immunity, the plaintiff bears the burden of satisfying the following strict two-part test; the plaintiff must establish "(1) that the defendant violated a constitutional or statutory right, and (2) that this right was clearly established at the time of the defendant's conduct." *McBeth v. Himes*, 598 F.3d 708, 716 (10th Cir. 2010)(*quoting Bowling v. Rector*, 584 F.3d 956, 964 (10th Cir. 2009)).  The court is not required to address these inquiries in any specific order*, Pearson v. Callahan, supra,* 555 U.S. at 236-37, and if the plaintiff fails to carry either part of his or her two-part burden, the defendant is entitled to qualified immunity.  *Medina v. Cram,* 252 F.3d 1124, 1128 (10th Cir. 2001).

Thus, the framework for analyzing claims of qualified immunity on summary judgment is well settled.  *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1255 (10th Cir. 1998).  Once a defendant pleads qualified immunity, the plaintiff bears the burden of:  (1) coming forward with sufficient facts to show that the defendant's actions violated a federal constitutional or statutory right, and (2) demonstrating that the right violated was clearly established at the time of the conduct at issue.  *Id.* (*citing Clanton v, Cooper*, 129 F.3d 1147, 1153 (10th Cir. 1997); *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995)).  At the summary judgment stage in a qualified immunity case, the court may not weigh evidence and must resolve genuine disputes of material fact in favor of the nonmoving party. *Tolan v. Cotton*, ___ U.S. __, 134 S.Ct. 1861,

1866, 188 L.Ed.2d 895 (2014); Fed.R.Civ.P. 56(a).

### III.  UNLAWFUL SEARCH

In this motion, the individual Defendants assert that they are entitled to qualified immunity on Plaintiff's unlawful search claim.  Plaintiff alleges that the search of her property conducted by Defendant Officer Koley (and Detective Macklin) on May 30, 2012, violated her constitutional rights under the Fourth Amendment which prohibits unreasonable searches. Specifically, she argues that there was no probable cause to search her residence, based on an unlikely scenario that she would keep fowl inside her home, and there was no probable cause to search the entire property, in that Officer Koley omitted exculpatory information from the probable cause affidavit.

In the context of a qualified immunity defense to an unlawful search claim, we ascertain whether a defendant violated clearly established law "by asking whether there was 'arguable probable cause'" for the challenged conduct.  *Stonecipher v. Valles,* 759 F.3d 1134, 1141 (10th Cir. 2014)(*quoting Kaufman v. Higgs,* 697 F.3d 1297, 1300 (10th Cir. 2012)).  "Arguable probable cause is another way of saying that the officers' conclusions rest on an objectively reasonable, even if mistaken, belief that probable cause exists."  *Id. (citing Cortez v. McCauley,* 478 F.3d 1108, 1120 (10th Cir. 2007)).

Where the alleged violation involves a search pursuant to a warrant, as here, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner or with "objective good faith." *United States v. Leon*, 468 U.S. 897, 922–923, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984); *see also Malley v. Briggs*, 475 U.S. 335, 344, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)(ruling that the standard of objective reasonableness

under *U.S. v. Leon, supra,* "defines the qualified immunity accorded an officer" who obtained or

relied on an allegedly invalid warrant).   However, there is "an exception allowing suit when 'it is

obvious that no reasonably competent officer would have concluded that a warrant should

issue.'" *Messerschmidt v. Millender*, *supra*, 132 S.Ct. at 1244 (*quoting Malley v. Briggs, supra*,

475 U.S. at 341).   The "shield of immunity" otherwise conferred by the warrant will be lost, for

example, where the warrant was "based on an affidavit so lacking in indicia of probable cause as

to render official belief in its existence entirely unreasonable." *Id*. (*quoting U.S. v. Leon, supra*,

468 U.S. at 923); *see also Messerschmidt v. Millender*, *supra*, 132 S.Ct. at 1244 (ruling that the

threshold for establishing this exception is high because "[i]n the ordinary case, an officer cannot

be expected to question the magistrate's probable-cause determination" in that "[i]t is the

magistrate's responsibility to determine whether the officer's allegations establish probable

cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth

Amendment")(citations omitted).

Probable cause exists when the supporting affidavit sets forth certain facts that would

lead a prudent person to believe there is a fair probability that particular evidence of a crime or

contraband will be found in a particular place. *United States v. Basham*, 268 F.3d 1199, 1203

(10th Cir. 2001).   An otherwise valid search warrant violates the Fourth Amendment if an affiant

"knowingly or recklessly omit[s] information which, if included, would have vitiated probable

cause." *Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996).   To determine whether material

omitted information vitiates probable cause, the court must examine the affidavit as though such

information had been included.   *Stewart v. Donges*, 915 F.2d 572, 582-83 n.13 (10th Cir. 1990).

The affidavit presented to the magistrate in support of the search warrant here provides

that Officer Koley advised Detective Macklin as follows. [Doc #41-9]  Officer Koley received a citizen's complaint about the number of chickens at a residence located at 425 West Third Street in the City of Rifle.  She went to the property, on May 21, 2012, and was greeted by the homeowner, later identified as Plaintiff.  Plaintiff told Officer Koley that she believed she had permission to have her 22 chickens.  Also at that time Officer Koley observed at least five geese in the front yard.  Officer Koley left and said that she would look into it and get back with Plaintiff.

After determining that Plaintiff was not allowed to have any chickens, Officer Koley contacted Plaintiff at her residence on May 23, 2012.  Officer Koley advised Plaintiff that she could give Plaintiff time to get rid of the them (until May 30, 2012 at noon) or write her a ticket for each animal.  Plaintiff responded that she was not getting rid of the chickens, that the City would be sued, that Officer Koley was "starting a war," and that Plaintiff was not going to pay any tickets or fines.  Later that afternoon, Officer Koley spoke with Plaintiff on the phone and again advised her that she could not have any chickens, and that she had until May 30, 2012 at noon to remove them.  During a subsequent telephone conversation on May 25, 2012, Plaintiff indicated that she was trying to work with the City of Rifle to keep the chickens.  When she was again advised that she had to get rid of the chickens, she stated that she was going to fight to keep the chickens and that she would see Officer Koley in court.

On May 30, 2012, at approximately 12:01 P.M., Officer Koley attempted to contact Plaintiff at her residence.  She was not home, and Officer Koley left her business card on the door. A few hours later, she went back to the residence.  During this visit Officer Koley asked Plaintiff if she had gotten rid of the chickens, and Plaintiff responded "It was for her to know and

[Officer Koley] to find out" and told her "not to come back into her yard without a warrant." [Doc #41-9]  So, Officer Koley, with the assistance of Detective Macklin, sought the right to search the Plaintiff's residence, as well as all buildings, chicken coops, sheds, pet carriers, and any other items meant to keep domestic fowl or any object which a fowl could be kept in.  Rifle Municipal Court Magistrate V. Zerbi signed the search warrant, based on the probable cause affidavit, on May 31, 2012.

The affidavit fails to indicate that during Officer Koley's two visits to Plaintiff's property on May 30, 2012, she neither observed nor heard any chickens or geese on the property. Plaintiff also argues that the affidavit fails to indicate that every time Officer Koley had observed the chickens in the past, they had been out in the yard, and that Plaintiff had previously told Officer Koley that if she couldn't keep the chickens, she wanted more time to find them homes. Plaintiff first contends that because there were no chickens or geese observed in the yard where they had been previously, it was "highly improbable that Plaintiff was actually hiding 22 chickens somewhere in her house" based on the practical considerations of everyday life.  And, if Officer Koley did, in fact, believe that Plaintiff was hiding chickens in her home, she did not indicate as such in the affidavit.  Plaintiff also asserts that the omission of information from the warrant affidavit – specifically, that Officer Koley did not see or hear fowl when on the property on May 30th, even though during her previous visits to the property they were clearly observable in the yard – undermines the magistrates conclusion that a search warrant was supported by probable cause.

However, as accurately discussed in the affidavit, Plaintiff consistently indicated that she would fight to keep the chickens and, when Officer Koley arrived to ask her if the chickens were

gone, on the May 30th deadline, she refused to answer the question – instead stating that was for her to know and for Officer Koley to find out.  She further indicated that Officer Koley would need to get a search warrant to find out if the chickens were gone.  I conclude that this information constituted sufficient probable cause to search the residence for chicken or fowl. While letting 22 chickens and 5 geese roam around in a house may be an unlikely scenario, harboring a few chickens in pet carriers, for example, is not at all far fetched under the circumstances.  In addition, even if the omitted information was included in the search warrant affidavit, there was more than sufficient probable cause to issue the warrant and search the entire property.  Plaintiff has failed to show that a reasonable officer could not have believed that probable cause (or arguable probable cause) existed, *Stonecipher v. Valles, supra,* 759 F.3d at 1141, or that "no reasonably competent officer would have concluded that a warrant should issue."*Messerschmidt v. Millender*, *supra*, 132 S.Ct. at 1245 (*quoting Malley v. Briggs, supra*, 475 U.S. at 341).

Because I have ruled that Plaintiff has not shown, under the undisputed facts, that the individual Defendants violated her constitutional right to protection from against unlawful search, I do not reach the issue of whether the right was clearly established under the second prong of the qualified immunity analysis.  *See Albright v. Rodriguez,* 51 F.3d 1531, 1535 (10th Cir. 1995)(ruling that "a defendant is entitled to qualified immunity if the plaintiff fails to show a violation of a constitutional right at all").  Thus, Defendants are entitled to qualified immunity on their §1983 claim for unlawful search under the Fourth Amendment.

## IV. UNLAWFUL SEIZURE

The individual Defendants also assert that they are entitled to a qualified immunity

defense on Plaintiff's unlawful seizure claim.  Plaintiff argues that she was illegally seized, in violation of her rights under the Fourth Amendment, when she was arrested without a warrant.  It is Plaintiff's contention that she was unreasonably arrested for failing to sign the penalty assessment citation served on her which, in turn, does not provide probable cause for her arrest as she was not legally bound or required to do so.  Defendants argue, in contrast, that Plaintiff was reasonably arrested based on probable cause for the unlawful keeping of geese on her property in violation of §7-6-103(a) of Rifle Municipal Code.

"[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004).  "Accordingly, when a warrantless arrest is the subject of a §1983 action, in order to succeed, a plaintiff must prove that the officer(s) lacked probable cause." *Buck v. City of Albuquerque,* 549 F.3d 1269, 1281 (10th Cir. 2008).  "Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed." *Henry v. United States*, 361 U.S. 98, 102, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959).  "Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." *Romero v. Fay,* 45 F.3d 1472, 1476 (10th Cir. 1995)(*quoting Anderson v. Creighton, supra*, 483 U.S. at 641).

In their motion, Defendants argue that Plaintiff was arrested, pursuant to the discretion of the arresting officers, for violating Rifle Municipal Code §7-6-103(a), which makes it unlawful to keep fowl on her property.  It is uncontested that there was sufficient probable cause to arrest for this offense, as the search warrant executed earlier that day revealed that five geese were

11

being kept in a garage on the property.  Defendants concede that the arresting officers did not make their own independent probable cause assessment, but rather relied on the probable cause determination of Officer Koley pursuant to the fellow officer rule.  *See generally Felders ex rel. Smedley v. Malcom,* 755 F.3d 870, 881 (10th Cir. 2014)(applying the collective knowledge or fellow officer rule to a §1983 claim). "When one officer requests that another officer assist in executing an arrest, the assisting officer is not required to second-guess the requesting officer's probable cause determination, nor is he required to independently determine that probable cause exists." *Stearns v. Clarkson,* 615 F.3d 1278, 1286 (10th Cir. 2010)(*citing Baptiste v. J.C. Penney, supra*, 147 F.3d at 1260).  As a result, I reject Plaintiff's unsupported argument that the fellow officers rule does not apply in this case to provide the officers probable cause to arrest Plaintiff for her unlawful keeping fowl on her property.

Plaintiff's primary argument, however, is that she was not arrested for violation of the Rifle Municipal Code section prohibiting the keeping of fowl, but rather the evidence is clear that she was arrested for her refusal to sign the citation served on her by the officers.  Because she was not legally obligated to sign the citation, the arresting officers had no probable cause that she was committing a crime by refusing to sign.  In making this argument, Plaintiff relies on *Kaufman v. Higgs*, 697 F.3d 1297 (10th Cir. 2012), in which the Tenth Circuit ruled that the defendant officers were not entitled to qualified immunity when they improperly arrested the plaintiff after he refused to answer their investigative questions, because his silence was insufficient under Colorado law to establish arguable probable cause for the crime of obstruction of justice.  *Id.* at 1302-3 (*citing Dempsey v. People*, 117 P.3d 800, 810-11 (Colo. 2005)); *see also Enright v. Groves*, 560 P.2d 851, 853 (Colo. App. 1977).  Plaintiff argues that under the ruling in

*Kaufman v. Higgs*, *supra*, a person cannot be arrested by refusing to do something that he or she is not legally required to do.

It is evident from an audiotape recording of the arrest that the officers arrested Plaintiff based on Sergeant Piña's order to do so if she refused to sign the citation.  For example, one of the arresting officers told Plaintiff that "I was just told by Sergeant to say if you do not sign that, to take you to jail," and "I'll take you to jail right now.  Or you can sign this." [Doc #47-1]  In addition, Sergeant Piña testified, during his deposition, that he instructed Officer Pruitt to issue the citation and if Plaintiff refused to sign it, she was to be arrested. [Doc #49-6]  Thus, it is Plaintiff's position that the evidence is clear that she was improperly arrested for her failure to sign the citation, not her violation of the Rifle Municipal Code.

However, even if the arresting officers believed that they were arresting Plaintiff for her refusal to sign – as opposed to the violation of Rifle Municipal Code set forth on the citation – the legal authority is that the subjective belief of the arresting officers is not relevant to the objective finding of whether or not probable cause existed to support an arrest.  "[T]he constitutionality of an arrest does not depend on the arresting officer's state of mind." *Apodaca v. City of Albuquerque,* 443 F.3d 1286, 1289 (10th Cir. 2006).  Thus, the "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause . . .  [a]n arrest is not invalid under the Fourth Amendment simply because the police officer subjectively intended to base the arrest on an offense for which probable cause is lacking, so long as the circumstances, viewed objectively, justify the arrest."  *Id. (quoting Devenpeck v. Alford, supra,* 543 U.S. at 153).  Therefore, in making an assessment of whether an officer had probable cause to make a warrantless arrest, such determination is an independent and objective

one, as "an officer's own subjective reason for the arrest is irrelevant, and it does not matter whether the arrestee was later charged with a crime." *Fogarty v. Gallegos*, 523 F.3d 1147, 1156 (10th Cir. 2008)(identifying objective reasonableness rather than subjective motivation as standard for probable cause determinations in the context of a §1983 claim).

Although the evidence indicates that the officers arrested Plaintiff because she refused to sign the citation, the state of mind of the officers is irrelevant to the probable cause assessment. Rather, the determination is solely whether probable cause existed sufficient for a prudent man to believe that a criminal offense had been committed. Because there was – in that there was probable cause that Plaintiff had kept five geese on her property after the deadline for removing them had passed – her arrest did not violate her constitutional right to be free of illegal seizure. *Stonecipher v. Valles, supra,* 759 F.3d at 1141 (ruling that a defendant "is entitled to qualified immunity if a reasonable officer could have believed that probable cause existed to arrest or detain the plaintiff")(*quoting Cortez v. McCauley, supra*, 478 F.3d at 1120).

In addition, to the extent that Plaintiff argues that the arresting officers violated her constitutional rights by arresting her for violating the Rifle Municipal Code prohibiting the keeping of fowl on her property, I note that the Fourth Amendment does not prohibit police from effecting a full custodial arrest for minor offenses. *Atwater v. City of Lago Vista*, 532 U.S. 318, 326, 1212 S.Ct. 1536, 149 L.Ed.2d 549 (2001); *see also Wells v. Ward,* 470 F.2d 1185, 1189 (10th Cir. 1972)(indicating that "[w]hen an accused, as did the appellant here, freely chooses custody rather than the simple expedient of acknowledging receipt of the ticket and agreeing to appear, it does not add up to an invasion of constitutional rights"). I reject Plaintiff's unsupported argument that these cases are distinguishable and not applicable here because the

14

arresting officers observed the minor offense being committed.

Because Plaintiff has again failed to establish that the individual Defendants violated her constitutional right against illegal seizure, I do not reach the issue of whether the right was clearly established under the second prong.  Defendants are entitled to qualified immunity on Plaintiff's claim of unlawful seizure under the Fourth Amendment.

## V. VIOLATION OF EQUAL PROTECTION

Finally, in a related argument, Plaintiff claims that her Fourteenth Amendment right to equal protection under the law was violated when she was arrested.  Specifically, she contends that the evidence establishes the officers intentionally treated her differently than those similarly situated, and that the difference in treatment was objectively irrational and abusive.

The Fourteenth Amendment Equal Protection Clause forbids states from "deny[ing] to any person within [their] jurisdiction the equal protection of the laws."  This is "essentially a direction that all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985).  The Supreme Court has recognized an equal protection claim brought by a single plaintiff  "where the plaintiff alleges that [he or she] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000).

In a "class of one" equal protection claim, a party must demonstrate that:  (1) he or she has been intentionally treated differently than those similarly situated; and (2) the difference in treatment was objectively irrational and abusive.  *See Mimics, Inc. v. Village of Angel Fire*, 394

15

F.3d 836, 849 (10th Cir. 2005); *Furlong Enterprises, LLC v. Nickerson*, 785 F.Supp.2d 970, 980

(D.Colo. 2011).  To succeed on such a claim, a plaintiff must prove that he or she was "singled

out for persecution due to some animosity," meaning that the actions of defendants constituted a

"spiteful effort to 'get' [him or her] for reasons wholly unrelated to any legitimate state activity."

*Bartell v. Aurora Pub. Sch.*, 263 F.3d 1143, 1149 (10th Cir. 2001); *see also Kansas Penn

Gaming, LLC v. Collins,* 656 F.3d 1210, 1217 (10th Cir. 2011)(recognizing that plaintiffs have a

"substantial burden" to demonstrate that others similarly situated in all material respects were

treated differently, and that there is no objectively reasonable basis for the defendant's action).

"The paradigmatic 'class of one' case, sensibly conceived, is one in which a public official, with

no conceivable basis for his action other than spite or some other improper motive (improper

because unrelated to his public duties), comes down hard on a hapless private citizen." *Cox v.

Cache County,* 18 F.Supp.3d 1251, 1263 (D.Utah 2014).

Courts are suspect of class-of-one equal protections claims as "turning even quotidian

exercises of government discretion into constitutional causes."  *Jicarilla Apache Nation v. Rio

Arriba County*, 440 F.3d 1202, 1209 (10th Cir. 2006); *Jennings v. City of Stillwater*, 383 F.3d

1199, 1210 (10th Cir. 2004)(noting that "[i]t is always possible for persons aggrieved by

government action to allege, and almost always possible to produce evidence, that they were

treated differently from others, with regard to everything from zoning to licensing to speeding to

tax evaluation").  "This would constitute the federal courts as general-purpose second-guessers

of the reasonableness of broad areas of state and local decisionmaking: a role that is both

ill-suited to the federal courts and offensive to state and local autonomy in our federal system."

*Id.* at 1211.

Plaintiff argues that the arresting officers were directed to arrest her if she refused to sign the citation, even though arresting a person for a minor infraction (such as violating the Rifle Municipal Code for keeping fowl) is unique.  The arresting officers told her that under "any other circumstances" they would not arrest her following her failure to sign the citation, but that they were "ordered to arrest her by my boss" if she did not.  The arresting officers then double checked that they were to arrest her with Sergeant Piña, who subsequently came to the scene and allowed the arrest after confirming that Plaintiff was refusing to sign.  Plaintiff was taken in policy custody, but then released on a summons and complaint upon order of the Chief of Police.

These facts, even when viewed in Plaintiff's favor, to not rise to the level of showing that she was treated differently from similarly situated people.  While it clear that arrest for violating the Rifle Municipal Code is admittedly unique, and it was the Chief of Police's position that a warrentless arrest should not be made in this situation, such facts do not show that she was intentionally treated differently from other people that have violated the Rifle Municipal Code section prohibiting the harboring of fowl.  *See Jennings v. City of Stillwater*, *supra*, 383 F.3d at 1214 (ruling that "[i]t is imperative for the class-of-one plaintiff to provide a specific and detailed account of the nature of the preferred treatment of the favored class").  Rather, I conclude that her argument consists only of conclusory allegations that she was intentionally treated differently than those similarly situated, which is inadequate to support any class-of-one claim.  *See Kansas Penn Gaming v. Collins, supra,* 656 F.3d at 1228 (noting that "the requirement that comparators be 'similarly situated in *all material respects*' is inevitably more demanding where a difference in treatment could legitimately be based on a number of different factors")(emphasis in original).

17

I also reject Plaintiff's argument that her treatment and arrest by the officers was blatantly irrational and abusive in light of the fact that they could have simply not arrested her and instead marked the citation as "refused to sign."  She maintains that "[c]learly, Plaintiff had upset the Rifle Police Department, and she was singled out for special treatment" due to some animosity.  She concedes that she can only speculate the reason for such animosity; she hypothesizes that perhaps she had angered/frustrated Officer Koley in their earlier meetings, or that she angered Sergeant Piña during a previous interaction she had with him related to a complaint she made to the Rifle Police Department about a stalker.  I conclude, however, that Plaintiff has failed to set forth sufficient facts demonstrating that her arrest, under the circumstances, was blatantly irrational and abusive.  Furthermore, I note that the applicable standard is objective in that if there is a reasonable justification for the challenged action, courts do not inquire into the government actor's actual motivations.  *Kansas Penn v. Collins*, *supra*, 656 F.3d at 1211 (*citing Jicarilla Apache v. Rio Arriba, supra,* 440 F.3d at 1210).  Here, it is undisputed that the arresting officers had reasonable justification in the form of probable cause to arrest Plaintiff for violation of the Rifle Municipal Code prohibiting the keeping of fowl on her property.  While it is clear that such violation does not necessitate arrest, the officers' discretionary decision to arrest Plaintiff was supported by reasonable justification.  *See Cox v. Cache County, supra,* 18 F.Supp.3d at 1263

I conclude Plaintiff cannot establish a constitutional violation of her right to equal protection and, so, I do not reach the issue of whether the right was clearly established under the second prong, as the individual Defendants are entitled to qualified immunity on this claim.

## VI.  MUNICIPAL LIABILITY

Because I have found that the individual Defendants are entitled to qualified immunity on

Plaintiff's claims raised pursuant to §1983, no municipal liability can be ascribed to the City of

Rifle in that Plaintiff has not demonstrated a predicate constitutional harm inflicted by an officer.

*Jiron v. City of Lakewood*, 392 F.3d 410, 419 (10th Cir. 2004); *Olsen v. Layton Hills Mall*, 312

F.3d 1304, 1317-18 (10th Cir. 2002)(ruling that "[w]e will not hold a municipality liable [for

constitutional violations] when there was no underlying constitutional violation by any of its

officers").  In addition, I note that Plaintiff bases her claim for municipal liability on a single

incident, not a pattern of violations of citizens' constitutional rights based on any custom or

policy.  *See Board of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 408, 117

S.Ct. 1382, 137 L.Ed.2d 626 (1997); *Oklahoma City v. Tuttle*, 471 U.S. 808, 821, 105 S.Ct.

2427, 85 L.Ed.2d 791 (1985)(ruling that a single incident generally will not give rise to liability).

"Where a plaintiff seeks to impose municipal liability on the basis of a single incident, the

plaintiff must show the particular illegal course of action was taken pursuant to a decision made

by a person with authority to make policy decisions on behalf of the entity being sued." *Moss v.

Kopp*, 559 F.3d 1155, 1169 (10th Cir. 1997)(citation omitted); *see also Butler v. City of Norman*,

992 F.2d 1053, 1055 (10th Cir. 1993)(ruling that "[p]roof of a single incident of unconstitutional

activity is not sufficient to impose [municipal] liability unless proof of the incident includes

proof that it was caused by an existing, unconstitutional municipal policy, which policy can be

attributed to a municipal policymaker.")

## VII.  STATE LAW CLAIMS

Finally, because I have dismissed Plaintiff's federal civil rights claims, raised under 42

U.S.C. §1983, her remaining claims – for false imprisonment; battery; abuse of process; malicious prosecution; intentional infliction of emotional distress; and negligent hiring, training and supervision – sound only in state law.  As a result, I must exercise supplemental jurisdiction pursuant to 28 U.S.C. §1367 in order to consider her remaining state law claims.  The exercise of supplemental jurisdiction "is within a district court's discretion."  *Wittner v. Banner Health*, 720 F.3d 770, 781 (10th Cir. 2013);  28 U.S.C. §1367(c)(3)(indicating that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim . . . if the district court has dismissed all claims over which it has original jurisdiction").

Based on the foregoing, I decline to exercise supplemental jurisdiction over Plaintiff's state law claims remaining against Defendants.  *Lancaster v. Indep. Sch. Dist. No. 5*, 149 F.3d 1228, 1236 (10th Cir. 1998)(ruling that once "the bases for federal subject matter jurisdiction have been extinguished . . . the district court may decline to exercise continuing pendant or supplemental jurisdiction over [the] plaintiff's state claims").  Thus, I dismiss Plaintiff's state law claims without prejudice.  *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216 (10th Cir. 2006)(recognizing established rule that "where the district court dismisses an action for lack of jurisdiction . . . the dismissal must be without prejudice" because a court without jurisdiction lacks power "to make any determination of the merits of the underlying claim").

ACCORDINGLY, I GRANT the Motion for Summary Judgment Asserting Qualified Immunity [**Doc #41**] in favor of the individual Defendants as to Plaintiff's claims raised pursuant to 42 U.S.C. §1983 based on a qualified immunity defense and, consequently, as to the municipal Defendant.   In addition, I DECLINE to exercise supplemental jurisdiction over

Plaintiff's state law claims, pursuant to 28 U.S.C. § 1367(c)(3).  As a result, I ENTER

JUDGMENT against Plaintiff on her federal claims, I DISMISS WITHOUT PREJUDICE her

remaining state law claims, and I AWARD COSTS to Defendants. It is FURTHER ORDERED

that this case is dismissed in its entirety.


Dated: January __27__, 2015 in Denver, Colorado.


BY THE COURT:


  s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE